IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

*In Re The Application Of:*

DULCE MARIA HERRERA MORA,
on behalf of L.B.D.H., minor child,

      Petitioner,

and            Case No.

ALEXIS DIMAS GUZMAN,

      Respondent.

**VERIFIED COMPLAINT AND PETITION OF DULCE MARIA HERRERA MORA
FOR ISSUANCE OF A SHOW CAUSE ORDER AND FOR RETURN OF THE MINOR
CHILD TO THE CHILD'S HABITUAL RESIDENCE OF MEXICO AND
<u>JURISDICTION OF MEXICO</u>**

NOW COMES the Petitioner, DULCE MARIA HERRERA MORA (hereinafter "Dulce"), on behalf of L.B.D.H., minor child, by her attorneys, Ice Miller LLP, and as and for her Verified Complaint and Petition For Issuance of a Show Cause Order and For Return of the Minor Child to the Child's Habitual Residence of Mexico and Jurisdiction of Mexico and states as follows:

1. This verified complaint and petition is brought pursuant to:

   - The Convention on the Civil Aspects of International Child Abduction, done at the Hague on 25 October 1980 (the "Convention"); The International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*

   - The Uniform Child Custody Jurisdiction and Enforcement Act, 750 ILCS 36/101 et. seq. (the "UCCJEA").

2. The Convention went into effect in the United States on July 1, 1988, and was accepted between the United States and Mexico, the Habitual Residence of the minor child, on October 1, 1991.

3. The objective of the Convention is to secure the prompt return of the child wrongfully removed to and retained in any Contracting State (Article 1(a)) and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States (Article 1(b)). Article II of the Convention provides that "[t]he judicial or administrative authorities shall act expeditiously in proceedings for the return of children."

4. The provisions of the Convention have been given the force and effect of law by the United States Congress through the passage of the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. (1995) (hereinafter "ICARA"). The ICARA was enacted for the specific purpose of "establish[ing] procedures for the implementation of the Convention in the United States." 42 U.S.C. § 11601(b)(l).

5. Pursuant to Article 19 of the Convention a decision under the Convention is not a determination of any underlying child custody claims.

## JURISDICTION

6. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. 11603(a).

7. Venue is proper in the United States District Court for the Northern District of Illinois, pursuant to *28 U.S.C. § 9003, 28 U.S.C. § 139l(d) and 42 U.S.C. § 11603(b)*, because the Respondent, ALEXIS DIMAS GUZMAN (hereinafter "Alexis"), and the minor child who are the subject of this Verified Complaint and Petition are currently located in Plainfield, Illinois, a municipality in Cook County, Illinois, which is located in this District, Eastern Division.

## BACKGROUND ALLEGATIONS

8. Dulce is a resident of Mexico seeking the return of her minor child, who was wrongfully retained in the United States of America from Mexico by the child's father without

Dulce's consent. Dulce is both an "applicant" as defined in *42 U.S.C. § 11602(1)* and a "petitioner" as defined in *42 U.S.C. § 11602(4)*.

9. The minor child, L.B.D.H., a female, was born in Michoacan, Mexico in 2019 and is currently four (4) years of age. A true and accurate copy of L.B.D.H.'s Birth Certificate is attached as **Exhibit A**.

10. Dulce is the natural and biological Mother of L.B.D.H.

11. Dulce and Alexis were married on August 20, 2021, in Michoacan de Ocampo, Mexico. The parties had been living separate and apart since March 2022. A copy of the parties' marriage certificate is attached as **Exhibit B**.

12. Prior to their wrongful retention in the United States, L.B.D.H. resided with Dulce at her residence in Michoacan, Mexico, where Alexis would visit once or twice a year.

13. On July 3, 2023, Alexis requested permission from Dulce to take L.B.D.H. to the United States so that he could take her to Disneyland for her birthday on October 18, 2023. On July 7, 2023, Dulce granted her consent through a Notary Public for the child to travel with Alexis to the United States for the limited timeframe.

14. In August 2023, L.B.D.H. called Dulce in tears and requested to go back home to Mexico, however, Alexis refused to send her back prior to the authorized timeframe in the notarized record, which permitted L.B.D.H to travel to the United States for 180 days.

15. Dulce contacted Alexis again asking about the return of L.B.D.H., and Alexis stated that he would return L.B.D.H. if and when Dulce entered the United States.

16. On August 8, 2023, Dulce entered the United States but was told by Alexis that he would not return L.B.D.H to her until she got a job and house. She returned to Mexico shortly afterward, when Alexis began threatening her parental rights to not only L.B.D.H. but to her other

two children from another marriage.

17. Alexis has refused to speak with Dulce since September 2023 and has allowed only limited communications with L.B.D.H.

18. The 180-day timeframe that L.B.D.H. was permitted to travel to the United States, according to the notarized record, has since expired as of around January 5, 2024, and there has been no communications from Alexis about the return of the minor child to Mexico.

## LEGAL STATUS OF DULCE AND THE CHILD

**Dulce Custody Rights**.

19. The Court consults the law of the country of habitual residence in order to determine a petitioner's rights of custody. *Abbott v. Abbott*, 560 U.S. 10 (2010); *Norinder*, 657 F.3d at 533. "The standard for finding that a parent was exercising his [or her] custody rights is a liberal one, and courts will generally find exercise whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Walker*, 701 F.3d at 1121 (internal quotation marks and citation omitted).

20. At the time of the child's removal from Mexico, Dulce was exercising her rights of custody within the meaning of Articles Three and Five of the Convention by maintaining regular and daily contact with the minor child at their residence in Michoacan, Mexico. But for Alexis' removal and retention of the child, Dulce would have continued to exercise her rights of custody.

**Mexico is the Child's Habitual Residence**.

21. The term "habitual residence" is undefined by the Convention. *Koch v. Koch*, 450 F.3d 703, 708 (7th Cir. 2006). The determination of habitual residence "is a fact-specific inquiry that should be made on a case-by-case basis. Moreover, . . . a parent cannot create a new habitual

Page 4

residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). The analysis "focuse[s] on the parents' last shared intent in determining habitual residence." *Koch*, 450 F.3d at 715. In the absence of a clear shared intent between the parties, the Supreme Court interprets the meaning of "habitual residence" within the Convention by claiming that "[a] child 'resides' where [she] lives," and that a residence is habitual only when it is "more than transitory, which will be necessarily fact specific. *Monasky*, 140 S. Ct. at 726.

22. From the birth of the child until her wrongful retention on or about January 5, 2024, L.B.D.H resided at 282 16 de Mayo Street, Alvaro Obregon, Michoacan, Mexico.

23. The minor child's friends and family are located in Mexico, including her two siblings, who live with her at 282 16 de Mayo Street, Alvaro Obregon, Michoacan, Mexico.

24. The child's pediatrician is Dr. José Misael López Díaz located in Michoacan, Mexico. The child has been a patient of Dr. Díaz since she was three months old.

25. Dulce's habitual residence is Mexico, and she has maintained said residence since LB.D.H.'s birth.

26. Alexis' habitual residence at the time of the child's removal and wrongful retention was Plainfield, Illinois.

27. There were never any discussions between Dulce and Alexis to change the minor child's habitual residence from Mexico to the United States.

28. At the time of the removal and wrongful retention of the minor child, Alexis was employed as a construction worker in Illinois.

**Retention of the Child in the United States was Wrongful**.

29. In violation of Mexican Law, specifically Article 398 of the Family Code for the State of Michoacán de Ocampo, Alexis' retention of the minor child without Dulce's authorization or consent or Order of Court was unlawful:

Page 5

"Article 398. Parental authority over minors is exercised:

I.   By the father and mother . . ."

This principle of "patria potestas" (custody) dictates that custody be exercised by both the father and mother. The First and Eleventh Circuit Courts of Appeal found that a petitioner's custody rights had been violated under the Convention when similar patria potestas principles applied under Mexican Law and a child was removed to another country without the consent of the petitioner. *Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000); *see also Fumes v. Reeves*, 362 F.3d 702, 714-722 (11th Cir. 2004). Recently, the Colorado Court of Appeals also held that authorization to temporarily remove the child from their habitual residence did not extinguish patria postestas rights. *In re Marriage of Morales and Meixueiro*, 546 P.3d 639 (COA 2024).

30.   In violation of Articles 3 and 5 of the Convention, Alexis' retention of the minor child without Dulce's authorization or consent or Order of Court was unlawful:

> "Article 3.
> The removal or the retention of a child is to be considered wrongful where –
> *a)* it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> *b)* at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."
>
> "Article 5.
> For purposes of this Convention –
> 'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence . . ."

Page 6

31. On February 7, 2024, in Mexico, Dulce submitted her application pursuant to the Hague Convention requesting the immediate return of the minor child. A copy of Dulce's Hague Convention application is attached as **Exhibit C**.

## REMOVAL AND RETENTION OF THE CHILD BY ALEXIS

32. *42 U.S.C. § 11604(b)* conditions this Court's authority to order a child removed from a person having physical control of the child on the satisfaction of applicable requirements of state law.

33. *ICARA* also authorizes this Court, "[i]n furtherance of the objectives of ... the Convention ... [to] take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." *42 U.S. C. § 11604*. Under *Section 210(a) of the UCCJEA*, "[t]he court may order any party to the proceeding who is in this State or over whom the court has personal jurisdiction to appear personally before the court. If that party has physical custody of the child the court may order that he appear personally with the child…".

34. The purpose of the Convention is to determine which country is most appropriate to have jurisdiction, not to determine the best parent or to determine the best interest of the child. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20, 130 S. Ct. 1983, 1995 (2010). "The entire purpose of the Convention is to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012).

35. A Complaint under the Convention may be treated as an application for a Writ of

Habeas Corpus under *28 U.S.C. §2241*, et seq., pursuant to which this Court may issue an order directing Respondent to show cause on an expedited basis why the children should not be returned immediately to the jurisdiction of their habitual residence in Mexico. See *Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus ... pursuant to *28 U.S.C.A. § 2243*"); see also *Miller v Miller*, 240 F.3d 392, 397- 98 (4th Cir. 2001); *In re: McCullough*, 4 F. Supp. 2d 411 (W. D. Penn., 1998); *Convention, Art. 11* (Establishing six-week target time frame for resolution of petitions under the Convention).

36. Alexis removed the child from Mexico on July 9, 2023, and wrongfully retained the child in the United States as of about January 5, 2024, within the meaning of Article Three of the Convention, and he continues to wrongfully retain the child in the United States despite efforts on the part of Dulce to have the child returned.

37. The child is presently in the Northern District of Illinois.

38. Alexis has concealed the child in the United States from Dulce since on or about August 2023, and pending the return of the child, Dulce seeks rights of access pursuant to Article 21 of the Convention.

39. Dulce has the ability to provide safe passage from the United States to Mexico for the minor child through a familial relative, Brenda Mora Herrera, who is prepared to personally accompany the minor child from the United States to Mexico.

40. Predicated upon the wrongful retention of the child by Alexis and in accord with Article 26 of the Convention, Alexis should be ordered to pay all necessary expenses, to include attorneys' fees and costs, incurred by Dulce in the preparation and presentation of this matter and in securing the return of the child to Mexico.

**WHEREFORE**, the Petitioner respectfully requests that this Court enter orders granting her the following relief:

A.     A Preliminary Show Cause Order

     1.     Commanding the Respondent (with or without the minor child) to appear in this Court to show cause why the minor child has been kept from her mother and why the minor child should not be returned to Mexico forthwith including the scheduling of an expedited preliminary hearing on the merits of the Complaint, an Order that Respondent show cause at this hearing why the child should not be returned to Mexico and, pursuant to *Federal Rule of Civil Procedure 64*, an Order that the trial of the action on the merits be expedited and consolidated with the hearing on the verified complaint;

     2.     Requiring Respondent to surrender to this Court any passports, residency and travel documents in his or the minor child's name;

     3.     Pursuant to 28 U.S.C. § 9004 and Article 16 of the Convention, prohibiting the child's removal from the jurisdiction of this Court pending final determination of the Petition;

     4.     Requiring Respondent to make the child available for daily communication via the internet and telephone pending a final resolution of the Petition; and

     5.     Providing that if Respondent fails to appear pursuant to this Court's Show Cause Order, this Court will issue an Order directing that the name of the minor child be entered into the national police computer system (N.C.I.C.) missing persons section and that an arrest warrant will be issued for Respondent; and

B.     A Final Order

     1.     An Order declaring and adjudicating that Respondent's retention of the child in the United States was wrongful under Articles 3 and 5 of the Convention;

2. An Order compelling the return of the minor child to her habitual residence in Michoacan, Mexico;

3. An Order requiring Respondent to pay the necessary expenses incurred by Petitioner in connection with these proceedings, pursuant to 22 U.S.C. § 9007, such expenses and costs to be resolved via post-judgment motion; and

4. Granting such other and further relief as this Court deems just and proper.

Dated this 3rd day of June, 2024

By: _____
Jeffrey Platt

Jeffrey Platt (#6208148)
Jeffrey.Platt@icemiller.com
Meredith Heim (#6339095)
Meredith.Heim@icemiller.com
ICE MILLER LLP
Attorneys for Petitioner
200 W Madison Street,
Suite 3500
Chicago, Illinois 60606
(630) 955-4280

**VERIFICATION BY CERTIFICATION**

    The undersigned verifies under penalty of perjury pursuant to 28 U.S.C. § 1746 and the laws of the United States of America that she has reviewed a translated version in Spanish of the foregoing verified complaint and petition and it is true and correct.

_May 31, 2024_                    _____
DATE                                           DULCE MARIA HERRERA MORA

Jeffrey Platt (#6208148)
Jeffrey.Platt@icemiller.com
Meredith Heim (#6339095)
Meredith.Heim@icemiller.com
ICE MILLER LLP
Attorneys for Petitioner
200 W Madison Street,
Suite 3500
Chicago, Illinois 60606
(630) 955-4280